Tracy Lynn TERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–83–030–CR.

Court of Appeals of Texas, Waco.

Nov. 17, 1983.

Discretionary Review Granted May 2, 1984.

W.A. Keils, Jr., Keils & Fulcher, Teague, for appellant.

Robert W. Gage, County Atty., Fairfield, for appellee.

HALL, Justice.

Pleading not guilty, appellant Tracy Lynn Terry was convicted by a jury for the murder of her mother, Cherie Loretta Temple, and punishment was assessed by the jury at confinement in the Texas Department of Corrections for a term of ten years.

The count of the indictment upon which the conviction rests alleged that appellant "intentionally and knowingly cause[d] the death of [the deceased] by shooting her with a .22 caliber firearm, beating her in the head with a pipe wrench and smothering her by placing a plastic bag over the face of the said [deceased]."

The State's position at trial was that appellant committed the offense either acting alone or acting as a party to the offense with her boyfriend, Milton Stroud. The evidence shows that during the day on September 21, 1982, appellant decided to kill her mother that night. She discussed the matter with Stroud and they decided they would kill the deceased while she was asleep that evening. Appellant and Stroud together loaded a .22 caliber semi-automatic rifle for this purpose. About an hour later Stroud entered the deceased's home while she was asleep and shot her in the head with a single bullet from the rifle. Appellant remained outside on the porch of the house. The bullet fired by Stroud entered the deceased's head on the left side, above and behind the left ear. Believing the bullet wound had not killed the deceased, Stroud then clubbed her with a plumber's pipe wrench with multiple blows to the left side of her face. Stroud then placed a plastic trash bag over the head of the deceased to suffocate her. Appellant stated in her written confession, admitted into evidence, that "this [suffocation] is what killed her. She would have died from the other, but we did not want her to suffer." After the deceased was dead, appellant and Stroud placed her body into a trunk. The trunk and the body were taken by appellant and Stroud in a car to a rural wooded area and left there. The trunk and the body in it were discovered in the woods

by a hunter on October 1, 1982. An autopsy performed on the body two days later revealed a state of severe decomposition and deterioration. The forensic pathologist who performed the autopsy testified that neither the bullet wound nor the wounds inflicted with the wrench nor their combination would have been immediately fatal; but that either, or their combination, would have been fatal if left without medical treatment. She said that because of the deteriorated condition of the body she could not determine whether the deceased died from suffocation. Accordingly, she concluded in her autopsy report that the deceased "died as the result of a gunshot wound of the head and blunt force injury to the head."

In the light of the evidence, the trial court instructed the jury verbatim on the provisions of V.T.C.A., Penal Code § 7.02(a)(2), as follows:

"A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."

Then, applying the law of the case to the facts, the trial court instructed the jury:

"Now if you find from the evidence beyond a reasonable doubt that defendant, TRACY LYNN TERRY, either acting alone or with another, Milton Stroud, as a party to the offense, as that term is hereinbefore defined, did then and there intentionally or knowingly, in Freestone County, Texas, on or about the 21st day of September, 1982, cause the death of an individual, Cherie Loretta Temple, by shooting her with a .22 caliber firearm or beating her in the head with a pipe wrench or smothering her by placing a plastic bag over the face of the said Cherie Loretta Temple, then you will find the defendant guilty of murder.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder [and find her not guilty]."

The verdict at the guilt/innocence phase of the trial was simply, "We, the jury, find the defendant, Tracy Lynn Terry, guilty of the offense of murder." The verdict at the punishment phase was, "Having found the defendant, Tracy Lynn Terry, guilty of the offense of murder, we, the jury assess her punishment at confinement in the Texas Department of Corrections for a term of 10 years." Upon these verdicts, appellant was adjudged guilty of the offense of murder and sentenced to confinement in the Texas Department of Corrections for a term of ten years. In the judgment, the trial court entered the finding "that a deadly weapon to-wit: A firearm was used in the commission of the offense." On this appeal, the only relief sought by appellant is reformation of the judgment by deletion of this affirmative finding. This finding is important to appellant since it will affect her eligibility for parole by denying her credit for good conduct time served in the penitentiary. Vernon's Ann.C.C.P. art. 42.-12, Sec. 3f(a)(2) provides: "Upon affirmative finding that the defendant used or exhibited a deadly weapon [as defined in § 1.07(a)(11), Penal Code] during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment." In Penal Code § 1.07(a)(11) a "deadly weapon" is defined to mean: "(A) firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." C.C.P. art. 42.12, Sec. 15(b) provides in pertinent part that "if the judgment contains an affirmative finding under Section 3f(a)(2) of this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than

two calendar years. All other prisoners shall be eligible for release on parole when their calendar time served plus good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less."

■ Appellant first argues that since Sec. 3f(a)(2) of C.C.P. art. 42.12 requires an affirmative finding that "the *defendant* used or exhibited a deadly weapon," the Legislature must have intended that the finding was applicable only to a defendant who actually and personally used or exhibited a deadly weapon, and not to a defendant like appellant. We disagree with this contention. Our present Penal Code, enacted in 1973, abolished the old distinction between primary and secondary actors to a crime, and it now provides in § 7.01 that all parties to a crime, including those whose activity is delineated in § 7.02(a)(2), set forth above, face equal criminal responsibility with the actual perpetrator for the commission of the offense. In *Wilder v. State*, 583 S.W.2d 349, 357 (Tex.Cr.App.1979), this criminal responsibility for a participant acting under the provisions of § 7.02(a)(2) was held to include the imposition of the death penalty. If this criminal responsibility of a nonperpetrator was intended by the Legislature to include the severest of penalties, then logically it was intended to include the feature involving loss of good conduct time credit toward release on parole set forth in C.C.P. art. 42.12, Sec. 15(b), supra.

■ The law is settled that in a jury trial the "affirmative finding" authorized in C.C.P. art. 42.12, Sec. 3f(a)(2), must be made by the jury before it may be properly included in the judgment. *Barecky v. State*, 639 S.W.2d 943, 944–945 (Tex.Cr.App.1982); *Ruben v. State*, 645 S.W.2d 794, 798 (Tex.Cr.App.1983). In our case, appellant asserts that the finding in the judgment "that a deadly weapon, to-wit: a firearm was used in the commission of the offense," was not made by the jury. The State responds that although the record does not support a jury finding that "a firearm" was used, it does support the jury finding that "a deadly weapon" was used

and that, for this reason, only the term "to-wit: a firearm" should be deleted from the judgment. We agree with the State.

■ The decisions of our Court of Criminal Appeals reflect that whether there has been a violation of the statutory requirement for an affirmative finding by the jury must be decided on a case by case basis, turning on matters like the wording of the indictment, instructions to the jury, the form of the verdicts, and use or not of special issues. *Ex parte Moser*, 602 S.W.2d 530, 533 (Tex.Cr.App.1980); *Ex parte Thomas*, 638 S.W.2d 905, 908 (Tex. Cr.App.1982). Under the court's instructions in our case the jury was entitled to convict appellant only if it found appellant killed the deceased by "intentionally or knowingly ... shooting her with a .22 caliber firearm or beating her in the head with a pipe wrench or smothering her by placing a plastic bag over the face of the said [deceased]," as was alleged in the indictment. Under the provisions of Penal Code § 1.07(a)(11)(A), supra, a .22 caliber firearm is a deadly weapon. Although we agree with appellant that a pipe wrench or a plastic bag is not a deadly weapon per se, nevertheless, under the provisions of Penal Code § 1.07(a)(11)(B), either can be a deadly weapon if "in the manner of its use and intended use [it] is capable of causing death or serious bodily injury." Under the evidence in our case the jury was justified in determining that appellant intentionally or knowingly caused the death of the deceased by shooting her with a .22 caliber firearm, or by beating her in the head with a pipe wrench, or by smothering her by placing a plastic bag over her face, or by any combination of these acts. Since the general verdict does not carry a finding that the death was caused by the use of the firearm, this finding should not have been included in the judgment. However, under the record the verdict does carry the finding that the manner of use and intended use of the pipe wrench or the plastic bag, or both, was capable of causing death, was in fact "intentionally and knowingly" used to cause death, and actually caused the

death of the deceased. Therefore this verdict must amount to an affirmative finding that appellant used a deadly weapon in the commission of the offense. *Ex parte Moser,* supra; *Hart v. State,* 581 S.W.2d 675, 677 (Tex.Cr.App.1979); *Chavez v. State,* 657 S.W.2d 146, 148 (Tex.Cr.App.1983).

Under the record before us we are authorized to correct the judgment as the law and the nature of the case require by deleting from the affirmative finding included in the judgment the words "to-wit: a firearm." V.A.C.C.P. art. 44.24(b); *Barecky v. State,* supra; *Ruben v. State,* supra. Accordingly the judgment is reformed by deleting from the finding the words "to-wit: a firearm," so that the finding shall now read "that a deadly weapon was used in the commission of the offense." With this reformation appellant's grounds of error are overruled, and the judgment is affirmed.