

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00085-CR

_____

EDUARDO GARDUNO HERNANDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2008-C-0283

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Eduardo Garduno Hernandez was sentenced to ten years' imprisonment following his conviction for aggravated kidnapping while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. § 20.04(b) (Vernon 2003). Hernandez argues that the evidence is legally insufficient[1] to support his conviction because the undisputed evidence demonstrates that the weapon alleged in his indictment to have been employed was a toy, which was neither used nor intended to be used as a deadly weapon. We agree with Hernandez and, therefore, modify the judgment to reflect his conviction of the lesser-included offense of kidnapping. TEX. PENAL CODE ANN. § 20.03 (Vernon 2003). Because of the modification, we must reverse the punishment phase of the trial and remand for a new trial on punishment.

## I. Factual and Procedural History

As Angela Bush sat in her bed, working on her laptop computer beside her sleeping husband, a masked intruder stole into her bedroom and watched. When she "closed the lid, that's when the gun came across the top of the computer just right in my face. And I screamed really loud." Bush's husband, who suffers from paralysis, was instantly awakened by his wife's scream

---

[1]Hernandez also argues the evidence was factually insufficient to support his conviction. With Judge Cochran joining the lead opinion, authoring a concurring opinion, and Judge Womack concurring with the lead opinion and joining the concurrence, in *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny. The plurality and Judge Womack agreed that the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 2010 WL 3894613, at **1, 14. Since the Texas Court of Criminal Appeals has abolished factual sufficiency review, we need not address the defendant's challenge(s) to the factual sufficiency of the evidence.

and "tri[ed] to sit up and get in front of" her, but was "helpless." The intruder threatened the terrified couple with the gun for over three hours before finally leaving, stealing $299.00 in cash, a blank check, and several pain pills from the couple. As soon as their tormenter left, Bush ran for the telephone and dialed 9-1-1, describing the intruder to the emergency operator as a male with his face painted and wearing a red bandana.

Officer Hilton Wayne Poindexter arrived at the Bush home, secured the perimeter, and began to search for the intruder by "searching the county roads or the different roads in and around the residence." A man on the side of a road attracted Poindexter's attention and reported sighting a male accessorized with face paint, a toboggan, red bandanas, gloves, and a gun. Poindexter found Hernandez (who admitted to possessing a gun) in this bizarre disguise. During Hernandez's arrest, Poindexter recovered from him the Bushes' money, their blank check, and a realistic-looking toy gun, which bore the words "Made in China" on one side and "Yesheng Toys" on the other.

The State's indictment alleged Hernandez committed aggravated kidnapping in that he

did then and there intentionally or knowingly abduct Angela Bush, by restricting the movements of said Angela Bush, without [her] consent so as to interfere substantially with her liberty by confining her with intent to prevent her liberation, by using or threatening to use deadly force, namely by displaying a pistol, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a pistol, during the commission of said offense . . . .

Hernandez claims the evidence is legally insufficient to demonstrate that he used or exhibited a deadly weapon during the commission of the offense. We agree.

3

## II. Standard of Review

In evaluating a legal sufficiency challenge, we apply the *Jackson* standard as explained in *Brooks*.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 319.

Here, we consider the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of aggravated kidnapping beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Legal sufficiency is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Under a hypothetically-correct charge in this case, the jury was required to find, beyond a reasonable doubt, that Hernandez "intentionally or knowingly abduct[ed] another person and use[d] or exhibit[ed] a deadly weapon during the commission of the offense." TEX. PENAL CODE ANN. § 20.04(b) (Vernon 2003).

4

## III.    The Toy Gun Was Not a Deadly Weapon in this Case

It is undisputed that the 'gun' used in the commission of the offense was not a gun but, rather, a toy.[2]  Under the Texas Penal Code, a deadly weapon is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  TEX. PENAL CODE ANN. § 1.07(17) (Vernon Supp. 2010).   Since this toy gun was not designed for and could not be adapted for the purpose of infliction of death or bodily injury, the State relies on subpart B of the deadly weapon definition.

Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense.  *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).   There are myriad items not designed as weaponry which by their use the courts of this State have deemed to have been employed as deadly weapons.[3]

---

[2]All witnesses testified that the toy gun was the one used during the commission of the offense.

[3]*Stanul v. State*, 870 S.W.2d 329 (Tex. App.—Austin 1994, pet. dism'd, pet. ref'd [2 pets.]) (defendant used floor as deadly weapon by striking victim's head against it); *Lozano v. State*, 860 S.W.2d 152 (Tex. App.—Austin 1993, pet. ref'd) (defendant used lighter as deadly weapon by using it to start a fire); *Enriquez v. State*, 826 S.W.2d 191 (Tex. App.—El Paso 1992, no pet.) (defendant used soft drink bottle as deadly weapon by striking victim with it); *Escobar v. State*, 799 S.W.2d 502 (Tex. App.—Corpus Christi 1990, pet. ref'd) (baseball bat used to bludgeon victim constituted deadly weapon); *Cooper v. State*, 773 S.W.2d 749 (Tex. App.—Corpus Christi 1989, no pet.) (defendant used hands as a deadly weapon by dropping infant to floor); *Rice v. State*, 771 S.W.2d 599 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (defendant used gasoline as deadly weapon by pouring it over victim and igniting it); *Johnson v. State*, 770 S.W.2d 72 (Tex. App.—Texarkana 1989) (defendant used hands and feet as deadly weapons by beating and kicking victim to death), *aff'd*, 815 S.W.2d 707 (Tex. Crim. App. 1991); *Roberts v. State*, 766 S.W.2d 578 (Tex. App.—Austin 1989, no pet.) (defendant used truck as deadly weapon in colliding with car, injuring and killing occupants); *Harper v. State*, 753 S.W.2d 516 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (defendant used rope or cord as deadly weapon by tying it around victim's neck, restricting her breathing); *Shockley v. State*, 747 S.W.2d 470 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (defendant used fabric or hands as deadly weapon by strangling victim); *Cervantes v. State*, 706 S.W.2d 685 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (defendant used board as

5

The State cites to testimony from Poindexter and Officer Ronnie Wesley Endsley that the toy is a hard plastic replica with sharp edges. "Being hard plastic, it could really do a number on them."[4] Although light in weight, they believed the gun could be used to hit Bush about the face and eye, and concluded it was a deadly weapon capable of causing bodily injury.

However, "[c]apability is evaluated based on the circumstances that existed at the time of the offense." *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). The toy gun was neither used to strike Bush, nor was there any evidence suggesting either that Hernandez threatened to use or intended to use the toy in that manner. There was no testimony from either Bush or her husband that Hernandez raised the gun as if he would strike them or otherwise threatened to strike them with the gun. Bush and her husband indicated only that Hernandez pointed the gun at them as if he was going to shoot them with (what eventually turned out to be a toy) gun. Because the use and manner of intended use (i.e., pointing and threatening as if to shoot) was not a use of the toy capable of causing serious bodily injury or death, we find such evidence was legally insufficient to allow a jury to infer the toy was a deadly weapon. *Cortez v.*

---

deadly weapon by striking victim with it); *Garza v. State*, 695 S.W.2d 726 (Tex. App.—Dallas 1985) (by placing broken metal belt buckle in his hand when striking at officer, defendant used the belt buckle as deadly weapon), *aff'd*, 725 S.W.2d 256 (Tex. Crim. App. 1987); *Terry v. State*, 672 S.W.2d 236 (Tex. App.—Waco 1983) (defendant used plastic bag as weapon by placing it over victim's head, suffocating her), *rev'd in part on other grounds*, 692 S.W.2d 496 (Tex. Crim. App. 1985).

[4]The officers also testified that Bush's husband was on blood thinner, and if hit with the gun, could endure a lot of bleeding, causing serious bodily injury or death. Because Hernandez was not indicted for commission of any crime against Bush's husband, we need not consider this evidence.

*State*, 732 S.W.2d 713, 715 (Tex. App.–Corpus Christi 1987, no pet.) (testimony regarding use of "pistol" insufficient where the "pistol" was toy).   We sustain Hernandez's point of error.

The State urges this Court to reform the trial court's judgment to reflect a conviction for kidnapping.     Where, as here, the jury charge includes a lesser-included offense, we may modify a judgment of conviction to reflect conviction of the lesser-included offense if we find that the evidence is legally sufficient to support the lesser-included offense, but insufficient to support conviction of the offense for which the defendant was convicted.   *Herrin v. State*, 125 S.W.3d 436, 443-45 (Tex. Crim. App. 2002); *Lackey v. State*, 290 S.W.3d 912, 920 (Tex. App.–Texarkana 2009, pet. ref'd).   Kidnapping is a lesser-included offense of aggravated kidnapping.   *Schweinle v. State*,[5] 915 S.W.2d 17, 19 (Tex. Crim. App. 1996) (per curiam); *Ex parte Gutierrez*, 600 S.W.2d 933, 935 (Tex. Crim. App. 1980); *see* TEX. PENAL CODE ANN. § 20.03 (Vernon Supp. 2009).   We examine the evidence to determine whether it was legally sufficient to establish a conviction for kidnapping.

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person.   TEX. PENAL CODE ANN. § 20.03(a).   "Abduct" means to restrain a person with intent to prevent his liberation by:   (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force."   TEX. PENAL CODE ANN. § 20.01(2)

---

[5]At the time the Texas Court of Criminal Appeals decided the *Schweinle* case, the offense now known as unlawful restraint was called "false imprisonment."   *See Schweinle*, 915 S.W.2d at 19.

(Vernon Supp. 2010). Since Bush was restrained[6] in her home, a place where she was likely to be found, in order to convict of aggravated kidnapping, the State was required to prove that Hernandez used or threatened to use "deadly force, namely by displaying a pistol" as charged in the indictment. Once alleged, the quoted portion of the indictment had to be proved. *Curry v. State*, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000).

There is no evidence in the record that Hernandez actually used deadly force. On the other hand, Hernandez aimed the ersatz pistol in a manner which suggested that he was threatening to shoot. Bush was unaware that the thing being pointed at her was a toy, but truly believed the object to be a real gun; she testified that she was afraid for her life. This is evidence, which a rational jury could consider, supporting a finding that Hernandez *threatened* to use deadly force by displaying a pistol.[7] We find the evidence was legally sufficient to show that Hernandez restrained Bush with intent to prevent her liberation by threatening to use deadly force. With this finding, we modify the trial court's judgment to reflect the conviction of Hernandez of the lesser-included offense of kidnapping. We affirm the trial court's judgment as modified and remand for a new trial only on the issue of punishment. TEX. R. APP. P. 21.9.

---

[6] "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, . . . by confining the person." TEX. PENAL CODE ANN. § 20.01(1) (Vernon Supp. 2010).

[7] *See Gallagher v. State*, No. 05-06-01010-CR, 2007 WL 3105642, at **1–2 (Tex. App.—Dallas Oct. 25, 2007, no pet.) (not designated for publication) (finding defendant threatened deadly force by using a soft-pellet air pistol in a manner in which victim feared for her life). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

8

**IV.     Conclusion**

We modify the trial court's judgment to reflect conviction of the lesser-included offense of kidnapping.   We affirm the judgment of conviction as modified.   The judgment on punishment is reversed, and we remand the case to the trial court for a new trial on punishment.


Bailey C. Moseley
Justice

Date Submitted:     October 25, 2010
Date Decided:        December 3, 2010

Publish